UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHARLOTTE B. LIND,

                                             Plaintiff,

                                                                                                DECISION AND ORDER

                                                                                                  05-CV-6162L

                   v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,[1]

                                              Defendant.
_____

## INTRODUCTION

      This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("the Commissioner") that plaintiff Charlotte Lind is not disabled under the Social Security Act, and therefore, is not entitled to disability insurance benefits ("DIB").

      Both plaintiff and the Commissioner has moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). For the reasons discussed below, the Commissioner's motion is granted, plaintiff's motion is denied, and the complaint is dismissed.

---

[1] Plaintiff's complaint names former Commissioner of Social Security Joanne B. Barnhart as the defendant. Michael J. Astrue, the current Commissioner, automatically is substituted as the defendant pursuant to Fed. R. Civ. P. 25(d)(1).

**PROCEDURAL BACKGROUND**

Plaintiff was born on April 16, 1958. (T. 48). She has a bachelor's degree in occupational therapy, and she worked as an occupational therapist from January 1992 until the alleged onset date of her disability, June 29, 2001. (T. 363).

Plaintiff filed an application for DIB on August 13, 2002. (T. 48). After her claim was denied, plaintiff requested a hearing. A hearing was held in October 2004, and on October 26, 2004, the Administrative Law Judge ("ALJ") issued a decision finding that plaintiff was not disabled. (T. 13-23). The ALJ's decision became the final decision of the Commissioner on February 23, 2005, when the Appeals Council denied plaintiff's request for review. (T. 5-7). This action followed.

**DISCUSSION**

**I. Definition of Disability**

Under the Social Security Act ("the Act"), a person is considered disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ... ." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). A physical or mental impairment (or combination of impairments) is disabling if it is of such severity that a person "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ... ." *Id.* at §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a person is disabled within the meaning of the Act, the ALJ proceeds through a five-step sequential evaluation. *Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999). The Second Circuit has described the five-step process as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work.  Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Tejada*, 167 F.3d at 774.

## II.  The ALJ's Decision

Applying the five-step disability evaluation, the ALJ first found that plaintiff had not engaged in substantial activity since her alleged onset date.  At steps two and three, the ALJ found that plaintiff had degenerative disk disease and depression, impairments that are severe within the meaning of the regulations, but not severe enough to meet or medically equal any of the impairments listed in Appendix 1.  (T. 16.)

At the fourth step, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform a significant range of light work.  (T. 20.)   The ALJ also stated that the vocational expert ("VE") testified that based upon plaintiff's RFC, plaintiff "could perform her past relevant work as an occupational therapist," (T. 20), but that appears to be a typographical error; in fact the VE testified that plaintiff would *not* be able to perform any of her past relevant work (T. 377), and the ALJ went on to determine whether there were other jobs that plaintiff could perform, which would only make sense if plaintiff could not perform her past relevant work.  (T. 20.)

The ALJ also found that plaintiff had no transferable skills from any past relevant work, and that her ability to perform all or substantially all of the requirements of light work was impeded by nonexertional limitations.   Using the Medical-Vocational Guidelines as a framework for

decisionmaking, he concluded, based in part on the VE's testimony, that plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy, and that a finding of "not disabled" was therefore required under Grid Rule 202.21. (T. 21.)

### III.  Standard of Review

The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and the ALJ applied the correct legal standards.  42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2$^d$ Cir. 2002); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2$^d$ Cir. 1991).  Substantial evidence is defined as "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Thus, "[i]t is not the function of a reviewing court to decide *de novo* whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2$^d$ Cir. 1999).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force[,]" this Court cannot substitute its own judgment for that of the Commissioner.  *Veino*, 312 F.3d at 586.

Such a deferential standard, however, is not applied to the Commissioner's conclusions of law.  *Townley v. Heckler*, 748 F.2d 109, 112 (2$^d$ Cir. 1984); *accord Tejada*, 167 F.3d at 773.  This Court must independently determine if the Commissioner's decision applied the correct legal standards in determining that the plaintiff was not disabled.  "Failure to apply the correct legal standards is grounds for reversal."  *Townley*, 748 F.2d at 112.  Therefore, this Court is to first review the legal standards applied, and then, if the standards were correctly applied, consider the substantiality of the evidence.  *Johnson v. Bowen*, 817 F.2d 983, 985 (2$^d$ Cir. 1987); *see also Schaal v. Apfel*, 134 F.3d 496, 504 (2$^d$ Cir. 1998) ("'Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to

have her disability determination made according to the correct legal principles.'") (quoting *Johnson*, 817 F.2d at 986).

Here, the Commissioner argues that substantial evidence in the record exists to support the ALJ's determination that plaintiff is not disabled.  Plaintiff contends that the ALJ's decision is not supported by substantial evidence, and that the ALJ erred in a number of respects.

**IV. Issues on Appeal**

**A. ALJ's Nonseverity Determination**

Plaintiff first alleges that the ALJ erred in determining that plaintiff's restless-leg syndrome and sleep apnea were not severe impairments.  The ALJ stated that the medical evidence showed that plaintiff's "sleep apnea is capable of being controlled with CPAP [continuous positive airway pressure] when she is compliant with her treatment," and that there was "minimal clinical evidence to corroborate or support any finding of significant vocational impact related to these conditions." (T. 16.)

Plaintiff contends that this finding was erroneous.  The law is clear, however, that "[t]o the extent that there is conflicting evidence in the record regarding Plaintiff's ... impairments, it was within the province of the ALJ to resolve that evidence." *Lopez v. Barnhart*, No. 3:05CV019, 2006 WL 1272644, at *5 (D.Conn. Mar. 1, 2006) (citing *Veino*, 312 F.3d at 588).

There is evidence supporting the ALJ's finding in this regard.  Specifically, there was medical evidence from Joseph E. Modrak, M.D., to whom plaintiff was referred by one of her treating physicians, Ramzi Ghosn, M.D., and who saw her on several occasions in 2002 and 2003, that plaintiff did benefit from the use of a CPAP device (Tr. 213), and that although at times she had some difficulties at times using the device, those difficulties could be overcome.[2]  (T. 214.)  That

---

[2]Pursuant to referrals from plaintiff's other physicians, Dr. Modrak also interpreted the results of certain tests that were performed during the period from 1999 to 2002, but it is not apparent whether he actually examined or spoke with her on those occasions.  (T. 219-34.)

evidence was not inconsistent with the other substantial evidence in the record. To the extent that there was evidence in the record indicating that plaintiff's sleep-related impairments were severe, plaintiff would have this Court substitute its view of the evidence for that of the ALJ, which I may not do. *Veino*, 312 F.3d at 586.

**B. Treating Physicians' Opinions**

Plaintiff also alleges that the ALJ failed to give sufficient weight to the opinions of plaintiff's treating physicians and other medical sources. It is not clear, however, in what respect plaintiff alleges that the ALJ did so. Certainly the ALJ nowhere expressly stated that he was rejecting the opinions of any of plaintiff's treating physicians. In fact, the ALJ stated that he gave "considerable weight" to the opinions of Drs. Paul Rubery and Ramzi Ghosn, both of whom were plaintiff's treating physicians (T. 19), and that he found the opinion of Dr. Kang Yu, another treating physician, to be "based upon a thorough review of the evidence" and "well-supported by the medical evidence." (T. 18-19.)

The gist of plaintiff's argument seems to be that the ALJ gave undue weight to the opinions of two examining sources, Drs. John Thomassen and Michael Obrecht. *See* Plaintiff's Mem. of Law (Dkt. #3-3) at 12. Again, though, it is not clear how, in plaintiff's view, those opinions were inconsistent with the opinions of plaintiff's treating physicians. Plaintiff appears to contend that the ALJ failed to credit or address portions of the opinions of plaintiff's treating physicians concerning the effects of her impairments on her ability to work, *see id.* at 10, but in making that argument, plaintiff has simply interpreted those opinions in a manner favorable to her, and then argued that the ALJ erred in not adopting that same interpretation. I find that argument neither persuasive nor mandated by the applicable statutes and regulations.

Contrary to plaintiff's arguments, the ALJ also did not err in rejecting the opinion testimony of a social worker, Kathleen Pullano. The ALJ stated that Pullano's opinion was "not afforded any weight," but he did so not simply because she was not an "acceptable medical source," *see* 20 C.F.R.

§ 404.1513, but because of the lack of evidentiary support for her opinion and other defects that he identified in her testimony. (T. 18.) I see no error in that regard.

**C. Plaintiff's Residual Functional Capacity**

Plaintiff next contends that the ALJ erred in finding that plaintiff had the residual functional capacity to perform a significant range of light work. Plaintiff's assertions in this regard are not supported by the record.

Plaintiff contends, for example, that "the ALJ did not include in his RFC [assessment] the need to sit and stand at will per Dr. Rubery ...," *id.* at 13, but in fact, in the hypothetical that he posed to the VE, the ALJ expressly asked her whether there were "[a]ny jobs ... that allow her to sit/stand at this time," (T. 376), and in response the VE identified three such jobs. Similarly, plaintiff contends that the ALJ "reject[ed]" Dr. Yu's report indicating that plaintiff's ability to deal with work-related stress fell into the "poor/none" range (T. 266), but again, the ALJ limited his hypothetical to "low stress" jobs (T. 376), and he found that plaintiff is "limited to ... low stress work ... ." (T. 20.) In addition, although plaintiff also asserts that the ALJ erred by failing to take into account certain limitations regarding plaintiff's sleep-related impairments, for the reasons stated, I conclude that the ALJ's factual findings in that regard are supported by substantial evidence.

**D. The ALJ's Hypothetical Question**

Plaintiff also contends that the ALJ's hypothetical question to the VE–in response to which the VE identified three jobs that plaintiff could perform–was improper in that it failed to include certain restrictions indicated by plaintiff's treating physicians. This argument, however, is little more than a recasting of plaintiff's argument concerning the ALJ's consideration of the opinions of plaintiff's treating physicians. For example, plaintiff contends that the ALJ failed to include limitations on plaintiff's ability to handle work-related stress, and plaintiff's need to sit or stand at

will.  As explained above, however, the ALJ did include those limitations in his hypothetical.  (T. 376.)

In addition, although the ALJ did not expressly include limitations on plaintiff's ability to reach, push or pull, the ALJ's hypothetical, when read in context, did adequately address such limitations.  Dr. Ghosn's RFC evaluation indicated that plaintiff was limited to "occasionally" reaching, pushing, and pulling, and to 20 minutes of continuous standing, walking and sitting.  (T. 342.)  The ALJ's hypothetical specified that the person should "avoid stooping, climbing, and balancing and so forth due to her back problem ... ."  (T. 376.)  As noted, the ALJ also indicated that the person should have a sit/stand option.  *Id.*  On examination by plaintiff's attorney, the VE also stated that the mail clerk and cashier jobs would require frequent handling, but "occasional or less" reaching, and that the charge account clerk job would also require frequent handling, but that "reaching [would be] never."  (T. 384-85.)

Furthermore, the ALJ found in his decision that plaintiff could perform a significant range of light work.  "Light work" can involve no more than "*some* pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b) (emphasis added).  Thus, the ALJ's finding was not inconsistent with the limitations noted by Dr.Ghosn.[3]

**E. Vocational Expert's Opinion**

---

[3]The DOT similarly states that

[e]ven though the weight lifted may be only a negligible amount, a job should be rated Light Work:  (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

DOT, App. C.  There is no indication that any of the jobs identified by the VE would require "working at a production rate pace," and thus no reason to think that they would require *constant* pushing or pulling.

Plaintiff also contends that the VE's testimony does not provide substantial evidence in support of the ALJ's decision, for a number of reasons. First, plaintiff asserts that the VE improperly offered opinion testimony based solely on her experience. It is clear, however, that "[e]vidence from VEs ... can include information not listed in the DOT," and that "[i]Information about a particular job's requirements ... may be available ... from a VE's ... experience in job placement or career counseling." SSR 00-4p. *See*, *e.g.*, *Faulkner v. Astrue*, No. CIV. A. 06-202, 2007 WL 2936111, at *14 (D.Del. Oct. 9, 2007) ("As a vocational expert, Melanson was qualified based on his education, training and experience to opine about the employment market"); *Smith v. Apfel*, No. 97 C 3173, 1999 WL 410018, at *5 (N.D.Ill. May 27, 1999) (ALJ's reliance on VE's testimony, which differed from DOT ratings, constituted substantial evidence to uphold ALJ's decision, since '[t]he VE based her opinion on her professional experience and particularized knowledge of the available jobs" in the Chicago area).

Plaintiff also contends that the VE's testimony conflicts with the requirement in the ALJ's hypothetical that any jobs involve "little interaction with the public." (T. 376.) Similarly, she argues that given the ALJ's hypothetical, the VE's opinion that these jobs would be suitable for someone like plaintiff conflicts with the DOT's indication that those jobs would require some contact with the public.

I disagree with these arguments. The VE explained that although some of the jobs she identified might involve frequent *contact* with the public, that contact would be largely superficial

(for example, making change for people at a parking lot tollbooth). (T. 380, 386.)[4] I therefore see no conflict between the VE's testimony and the ALJ's hypothetical or the DOT.

**F. ALJ's Assessment of Plaintiff's Credibility**

Plaintiff also contends that the ALJ improperly found her testimony concerning her impairments to be less than entirely credible. Specifically, the ALJ stated that he found plaintiff's statements concerning her impairments and their impact on her ability to work "not entirely credible in light of the reports of the treating and examining practitioners and the findings made on examination." The ALJ noted that plaintiff "has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (T. 20.) In particular, he noted that the evidence showed that plaintiff "was capable of caring for herself and a disabled, wheelchair bound husband for almost two years after the alleged date of onset." *Id.*

"[T]he credibility of a claimant's testimony is for the ALJ to decide in the first instance ... ." *Gross v. McMahon*, 473 F.Supp.2d 384, 389 (W.D.N.Y. 2007) (citing *Starks v. Bowen*, 873 F.2d 187, 190 (8th Cir. 1989)). *See Pietrunti v. Director, Office of Workers' Comp. Programs*, 119 F.3d

---

[4]In her supplemental submission in response to defendant's motion, plaintiff also cites *The Enhanced Guide for Occupational Exploration* ("GOE") as indicating that the cashier position identified by the VE has a temperament category requiring "dealing with people," which is defined as "working together with others or helping them (more than just giving or receiving instructions)." Dkt. #7 at 1. Temperament classifications are not listed in the DOT, however. *See Burns v. Barnhart*, 312 F.3d 113, 128 n. 9 (3d Cir. 2002) ("While aptitudes are discussed in various occupational handbooks, *see, e.g.*, J. Michael Farr, et al., *Guide for Occupational Exploration* (3d ed. 2001), aptitude levels are not in the DOT or any other source of which the Social Security Administration has taken administrative notice. Therefore, the DOT and testimony of the vocational expert was not necessarily inconsistent in this regard, so the duty on the part of the ALJ to inquire into conflicts did not arise").

Furthermore, although plaintiff's counsel asked the VE generally about the extent of contact with the public involved in these jobs, he did not inquire about any particular temperament requirements. He cannot now premise an alleged conflict based on such requirements. *See Donahue v. Barnhart*, 279 F.3d 441, 446-47 (7th Cir. 2002) ("[t]he ruling [00-4p] requires an explanation only if the discrepancy was 'identified'–that is, if the claimant (or the ALJ on his behalf) noticed the conflict and asked for substantiation. Raising a discrepancy only after the hearing ... is too late"); *Perez v. Barnhart*, 440 F.Supp.2d 229, 233 n. 1 (W.D.N.Y. 2006) (noting that when given an opportunity to examine the VE, plaintiff's counsel failed to bring to her attention any conflict between her testimony and the DOT).

1035, 1042 (2[d] Cir. 1997) ("credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are 'patently unreasonable'") (quoting *Lennon v. Waterfront Transport*, 20 F.3d 658, 661 (5th Cir. 1994)); *Alvarado v. Barnhart*, 432 F.Supp.2d 312, 319 (W.D.N.Y. 2006) ("An ALJ's determination with respect to the credibility of witnesses is also given great deference because the ALJ heard the testimony and observed the demeanor of the witnesses") (quoting *Ruiz v. Barnhart*, No. 03 Civ. 10128, 2006 WL 1273832, at *7 (S.D.N.Y. May 10, 2006)).

In the case at bar, I conclude that the ALJ's findings regarding plaintiff's credibility, which were based in part on the evidence concerning her daily activities as well as the other medical evidence before him, were well within the ALJ's discretion. *See Perez v. Barnhart*, 440 F.Supp.2d 229, 234 (W.D.N.Y. 2006) ("Besides the lack of medical evidence, the ALJ also properly relied in part on the testimony concerning plaintiff's daily activities, which was some evidence of plaintiff's physical capabilities"). "Where, as here, the ALJ has exercised his discretion and evaluated plaintiff's credibility, the Court may not examine the evidence and substitute its views for those of the Commissioner." *Crowley v. Barnhart*, 220 F.Supp.2d 176, 181 (W.D.N.Y. 2002).

## CONCLUSION

Defendant's motion for judgment on the pleadings (Dkt. #4) is granted, plaintiff's motion for judgment on the pleadings (Dkt. #3) is denied, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      January 10, 2008.